

SO ORDERED,

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| Bryan Peter Fernandes, | ) | Case No.: | 19-11032-JDW |
| | ) | | |
| Debtor. | ) | Chapter | 7 |

### MEMORANDUM OPINION AND ORDER GRANTING
### MOTION TO COMPEL TURNOVER (Dkt. # 12)

This matter came before the Court on the *Motion to Compel Turnover* (Dkt. # 12) filed by the Chapter 7 Trustee, William L. Fava (the "Trustee"), and the *Response in Opposition to Trustee's Motion to Compel Turnover* (Dkt. # 18) filed by the Debtor, Bryan Peter Fernandes (the "Debtor"). The question is whether the Debtor's tax refund proceeds remained exempt under Miss. Code Ann. § 85-3-1(j) and (k), despite having been commingled with other funds in a non-exempt bank account a month before the bankruptcy filing. The Court concludes the funds are non-exempt property of the bankruptcy estate and must be turned over to the Trustee for distribution to creditors.

1

An evidentiary hearing was held on July 16, 2019. The Trustee and the Debtor both appeared. The Debtor's attorney of record, Olufemi G. Salu, failed to attend the hearing, and an Order to Show Cause for Failure to Appear was entered. (Dkt. # 29). Mr. Salu appeared at the show cause hearing and was allowed, at his request, to be heard on the underlying Motion to Compel Turnover. No facts were disputed and no new evidence was presented. Mr. Salu's failure to attend the prior hearing was inappropriate but had no impact on the outcome of this matter.

The Court has considered the evidence, pleadings, and relevant law, and finds and concludes that the Motion to Compel Turnover is due to be granted, and the Debtor shall remit $6,053.46 to the Trustee.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O).

## II. FACTS[1]

While there is little dispute about the facts, the timeline is important. The Debtor received his 2018 state tax refund of $476.00 on February 13, 2019. On February 26, he received his 2018 federal tax refund of $4,686.61. Both tax refunds were direct-deposited in the Debtor's checking account. On March 11, 2019 (the "Petition Date"), the Debtor filed his chapter 7 bankruptcy petition. (Dkt. # 1).

Between receipt of the tax refunds and the Petition Date, the Debtor made numerous deposits and withdrawals. The bank statements admitted into evidence begin on February 19, 2019 (a week after receipt of the state refund) with a beginning balance of $2,316.87. (Trial Ex. # 1). From February 19, 2019 until the Petition Date, six deposits were made totaling $6,599.83 and fifteen withdrawals were made totalling $2,863.24. *Id.* On the Petition Date, the bank account had a balance of $6,053.46. *Id.*

The Trustee sought turnover, claiming the bank account was non-exempt property of the bankruptcy estate and the funds therein must be turned over to the Trustee for distribution to creditors. The Debtor responded by claiming that $5,162.61 of the bank account originated from exempt tax

---

[1] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.

3

refunds and retained that status despite having been deposited into the bank account. (Dkt. # 18, ¶ 5).

In both his original Schedule C and an Amended Schedule C, the Debtor claimed an exemption in the 2018 federal tax refund under Miss. Code Ann. § 85-3-1(j) and the 2018 state tax refund under Miss. Code Ann. § 85-3-1(k).[2]

### III. CONCLUSIONS OF LAW

The Debtor filed a chapter 7 bankruptcy case. In a chapter 7, whether an asset is property of the estate is determined on the petition date, although certain assets may be claimed as exempt and thereby excluded from property of the estate.[3] States have the option of using federal exemptions or opting out and using state exemptions.[4]

In accordance with 11 U.S.C. 522(b), the State of Mississippi has opted out of the federal exemptions and Mississippi debtors may claim exemptions only under Mississippi state law.[5] State law provides that tax refund proceeds

---

[2] In his original Schedule C, the Debtor claimed an exemption in the checking account under Miss. Code Ann. § 85-3-4. (Dkt. # 1). The Trustee objected, arguing that Miss. Code Ann. § 85-3-4 does not apply to checking accounts. (Dkt. # 7). The Debtor amended his Schedule C to remove the checking account exemption, but retained the tax refund exemptions in his Amended Schedule C. (Dkt. # 9).

[3] 11 U.S.C. §§ 541(a)(1); 522(b)(1).

[4] 11 U.S.C. § 522(b)(2).

[5] Miss. Code Ann. § 85-3-2.

4

may be claimed as exempt up to certain limits.[6] There is no applicable exemption for bank accounts in this case. There is no dispute that the Debtor received funds in the form of tax refund proceeds, when those funds were deposited, or how long the funds were in the account prior to the Petition Date.

A. Snapshot Rule

The Court of Appeals for the Fifth Circuit follows the "snapshot rule."[7] The "snapshot rule" provides that all exemptions are determined as of the petition date.[8] The Fifth Circuit has been clear that "whether a particular property or interest in property of a debtor's bankruptcy estate is eligible for exemption is, like so many other questions in bankruptcy, determined strictly 'as of' the date on which the petition in bankruptcy is filed."[9] The Fifth Circuit has been unequivocal:

---

[6] Miss. Code Ann. § 85-3-1 provides:
> There shall be exempt from seizure under execution or attachment:
>> ….
>> (j) An amount not to exceed Five Thousand Dollars ($5,000.00) of federal tax refund proceeds.
>> (k) An amount not to exceed Five Thousand Dollars ($5,000.00) of state tax refund proceeds.
>> ….

Miss. Code Ann. § 85-3-1(j) and (k).

[7] *In re Brown*, 807 F.3d 701, 708 (5th Cir. 2015).

[8] *In re Frost*, 744 F.3d 384, 385 (5th Cir. 2014) (citing *In re Zibman*, 268 F.3d 298, 301 (5th Cir. 2001)).

[9] *In re Orso*, 283 F.3d 686, 691 (5th Cir. 2002).

5

> We cannot emphasize too strongly that the day on which the bankruptcy petition is filed is the "as of" date for determining the applicability of exemption provisions. Even though, of necessity, the judicial decision-making process on exemption issues takes place subsequent to the filing of the petition, the court must take a retrospective "snapshot" of the law and the facts as they stood on the day the petition was filed.[10]

Here, the funds had been deposited into a non-exempt deposit account several weeks before the Petition Date. Other funds were already in the account. More deposits were made, and several withdrawals were made, prior to the Petition Date. While the refund proceeds were exempt under Mississippi law at one time, the proceeds had been commingled with non-exempt funds in a non-exempt bank account on the Petition Date. The snapshot rule requires this Court to determine whether the tax refund proceeds somehow retained their exempt status as of the Petition Date.[11]

### B. Fifth Circuit Homestead and IRA Cases

The Court recognizes that the Fifth Circuit has held, in very limited cases, that exempt assets may retain their exempt status despite being held in a non-exempt form, but only for the period of time authorized by state law.

---

[10] *Id.* at 692.

[11] *Frost*, 744 F.3d at 385.

6

When an exemption is claimed under state law, "it is the entire state law applicable on the filing date that is determinative."[12]

In *Zibman*, the debtors sold their home prior to filing their chapter 7 bankruptcy petition and claimed the sale proceeds as exempt under Texas state law, which provides that proceeds from the sale of a homestead remain exempt for six months.[13] The Fifth Circuit held that the sale proceeds lost their exempt status and became property of the bankruptcy estate when the Debtors failed to reinvest the funds within the six month period, which elapsed three months after the petition was filed.[14] In a similar case, the Ninth Circuit recognized that under the snapshot rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition and that exemptions must be determined in accordance with the state law applicable on the date of filing, as provided in 11 U.S.C. § 522(b)(3)(A).[15] The Ninth Circuit further noted that the entire state law applicable on the filing date included a reinvestment requirement for homestead sale proceeds to be exempt.[16]

---

[12] *Zibman*, 268 F.3d at 304.

[13] *Id.* at 300-01.

[14] *Id.* at 305.

[15] *In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012).

[16] *Id.*

In *In re Hawk*, the Fifth Circuit held that funds the debtors had properly exempted in an IRA on the petition date that were subsequently withdrawn from the IRA did not lose their exempt status.[17] But the Fifth Circuit recognized that if the debtors had withdrawn the funds from their retirement account before filing bankruptcy, those funds would have been subject to the applicable sixty-day limitation on the exemption under Texas state law, similar to the six month limitation to reinvest homestead sale proceeds.[18]

These cases are unique in that they are grounded in state exemption laws that preserve the exempt status of those special assets. Mindful that exempt assets were often converted to non-exempt bank accounts, legislatures chose to preserve the exempt status for a limited time period. There is no such provision in the Mississippi tax refund exemption statutes.

C. Retaining Exempt Status Under *Porter*

In 1962, the United States Supreme Court held that veterans' benefits retained their exempt status even after being deposited in a bank account because the funds were readily available as needed for support and maintenance and had not yet been converted to a permanent investment

---

[17] *Hawk v. Engelhart (In re Hawk)*, 871 F.3d 287 (5th Cir. 2017).

[18] *Id.* at 296.

(regardless of the technicalities of title and other formalities).[19] The Court determined, however, that once those benefits had been transformed into investments, such as negotiable notes or savings bonds, the exemption was lost.[20]

Citing *Porter*, the Bankruptcy Court for the Southern District of Ohio has held that funds in a debtor's bank account on the petition date were exempt because those funds could be traced to undisputedly exempt sources (specifically federally exempt veterans' benefits and disability benefits exempt under Ohio state law).[21] That court reasoned that if statutorily exempt funds were automatically deprived of their statutory immunity when deposited in a personal checking account, legislative intent to protect those funds intended primarily for maintenance and support of the debtor's family would be frustrated.[22] But that court also recognized, in a separate opinion, that exempt

---

[19] *Porter v. Aetna Casualty and Surety Co.*, 370 U.S. 159 (1962).

[20] *Id.* at 161.

[21] *In re Cook*, 406 B.R. 770, 773-74 (Bankr. S.D. Ohio 2009).

[22] *Id.* at 774 (citing *Daugherty v. Central Trust Co. of North-Eastern Ohio, N.A.*, 504 N.E. 2d 1100, 1103 (Ohio 1986)).

funds retain their exempt status when deposited in a checking account only if the funds are reasonably traceable to an exempt source.[23]

The Bankruptcy Court for the District of Nevada also looked to *Porter* when it held that a debtor's pre-petition earnings that were deposited in his bank account on his petition date retained their exempt status, but again because no other non-exempt funds had been deposited in the account and the funds were directly traceable to the exempt asset.[24] The Nevada court noted that:

> There is authority that a deposit of exempt funds in a bank does not affect a debtor's exemption, nor change the exempt character of the fund, *so long as the source of the exemption is readily traceable*. If it is impossible to separate out exempt from nonexempt funds, the general rule is that an exemption cannot lie.[25]

Under *Porter*, even in the Fifth Circuit, an asset might retain its exempt status in a non-exempt form when that asset can be undisputedly traced to an exempt source. Even these tax refunds could have retained that exempt status if on the Petition Date there was no question that the funds in the account were refund proceeds. That is not what happened here. The tax refund proceeds

---

[23] *In re Sparks*, 410 B.R. 602, 607 (Bankr. S.D. Ohio 2009) (citing *Daugherty*, 504 N.E. 2d at 1103).

[24] *In re Norris*, 203 B.R. 463 (Bankr. Nev. 1996).

[25] *Id.* at 467 (citing 31 Am. Jur. 2d Exemptions § 224 (1989)) (emphasis added).

went into the Debtor's checking account and were immediately commingled with other non-exempt funds and are not readily traceable. The tax refunds were not held in a separate account. The deposit was not made on the Petition Date. The account was not dormant – in the several weeks between deposit of the tax refunds and the Petition Date, the Debtor continued to make deposits and take withdrawals. By the Petition Date, the refund proceeds had become so commingled with other funds that they lost their identity as tax refunds and had become fungible cash.

The cases that have traced funds to exempt sources employ different methods to determine what portion of the account proceeds are exempt.[26] None of those cases are in the Fifth Circuit nor do they discuss the snapshot rule. There is nothing to indicate that any of those tracing methods should be applied here, much less which one.[27]

Finally, no statements were admitted into evidence covering the period when the state tax refund proceeds were deposited, and the Court has no way

---

[26] *See In re Wharton-Price*, 2015 WL 4230856 (Bankr. M.D. Fla. 2015) (percentage method); *In re Marve*, 484 B.R. 735 (Bankr. N.D. Ind. 2013) (first-in, first-out approach); *In re Arianna*, 461 B.R. 723 (Bankr. S.D. Ohio 2011) (lowest intermediate balance test).

[27] Further, under Miss. Code Ann. § 85-3-1(j) and (k), only tax refund proceeds up to $5,000 can be claimed as exempt. Here both tax refunds were less than the exempt amount. What if the refunds were more that the allowed amount? What was spent first – the non-exempt portion or the exempt portion?

of knowing what the balance was or what other deposits and withdrawals were made during that time frame. Those statements would likely show more commingling. Even if the Court were to employ one of the accounting methods, there is no way to know if those funds had depleted by the time the statements admitted into evidence began.

## IV. CONCLUSION

In the Fifth Circuit, the snapshot rule is clear that exemptions are determined on the petition date. Here, the funds in the Debtor's bank account were held in a non-exempt deposit account on that date. There is no dispute that on the date the Debtor filed his bankruptcy petition, there was $6,053.46 in his bank account. There is no exemption for bank accounts under Mississippi state law. No preservation statute exists for tax refunds in Mississippi, and the funds are not readily traceable to an exempt source. While the objecting party has the burden of proving that exemptions are not properly claimed,[28] the Court finds that the Trustee has met its burden by applying the law to the undisputed timeline. The funds in the Debtor's checking account on the Petition Date are subject to turnover. Accordingly, it is hereby

---

[28] Fed. R. Bankr. P. 4003(c).

**ORDERED, ADJUDGED,** and **DECREED** that the Motion to Compel Turnover is **GRANTED**, and the Debtor shall remit $6,053.46 to the Trustee for distribution to creditors.

##END OF ORDER##